UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOSE R. CASTRO-LINO,

                Petitioner,

    v.

RON HAYNES,

                Respondent.

CASE NO. 3:19-cv-05405-BHS-JRC

REPORT AND RECOMMENDATION

NOTED FOR:  September 25, 2020

The District Court has referred this petition for a writ of habeas corpus under 28 U.S.C. § 2254 to the undersigned as authorized by 28 U.S.C. § 636(b)(1)(A)–(B) and local Magistrate Judge Rules MJR3 and MJR4.

A Washington State jury convicted petitioner of second-degree rape in April 2015. Petitioner asserts multiple grounds for relief in his amended petition:  (1) that the trial court erred when it denied his motion for a new trial based on his trial attorney allegedly preventing petitioner from testifying, (2) that his post-trial attorney rendered ineffective assistance related to the motion for a new trial, (3) that the prosecutor committed misconduct in closing by misstating

the law and reducing the burden of proof, and (4) that his trial attorney rendered ineffective assistance by failing to object to alleged prosecutorial misconduct, by failing to call a detective as a defense witness, and by failing to call an expert witness.  None of petitioner's grounds for relief warrant granting his petition.  His claims related to the denial of his motion for a new trial were not properly exhausted and he cannot now obtain relief on those claims in either state or federal court.  The state court did not unreasonably apply clearly established federal law when it concluded that the prosecutor's comments were all either proper or not prejudicial to petitioner's trial, that the detective's statements were consistent with the victim's trial testimony, and that the memory expert's testimony was unnecessary where petitioner did not testify.  Accordingly, the petition should be denied.

## BACKGROUND

### I. Federal Court Proceedings

Petitioner, who is *pro se* and currently incarcerated at Stafford Creek Corrections Center, initiated this matter in May 2019.  Dkt. 1.  The case has progressed through a number of stages before being presented for briefing on the merits of the petition.  The Court directed service of the petition.  After respondent filed the answer and partial record of state court proceedings, the Court directed respondent to supplement the record and to respond to a ground for relief that respondent had overlooked.  *See* Dkt. 17, at 2.

After respondent filed the supplemental answer and record, the Court granted petitioner's request to amend his petition.  *See* Dkts. 19, 20, 24, 27.

### II. State Court Proceedings

#### A. Trial and Direct Appeal

The state court record of proceedings sets forth the following events.

1    In July 2015, the Clark County Superior Court sentenced petitioner to 90 months to life in

2  prison, following his jury conviction for second-degree rape. Dkt. 15-1, at 5.

3    Petitioner appealed, and Division Three of the Washington State Court of Appeals

4  affirmed. *See* Dkt. 15-1, at 18. Division Three summarized the matter as follows:

5       The charge arose after a night of heavy drinking by Mr. Castro-Lino, his
        fiancee's son, and a group of the son's friends. While the son and several of his
6       friends—including the victim—were under the age of 21, the defendant was nearly
        30. The party wound down at Mr. Castro-Lino's residence, with many of the
7       younger partygoers ultimately sleeping there.

8       The victim, M.L., went to sleep on her stomach on a bed in the basement
        beside one her friends. While asleep, she was slightly awakened by what she
        described as "penetration." Drowsy, she thought nothing of it and rolled over onto
9       her back and returned to sleep. She soon again felt penetration and woke up due to
        pain. She opened her eyes and saw Mr. Castro-Lino on top of her. Upon seeing
10      her open eyes, he stood up and left the basement. Anal swabs subsequently
        revealed sperm belonging to Mr. Castro-Lino.

11      The defense called Hamed Mohamud to describe his observations of the
        evening's events. He testified that in the early morning he saw Castro-Lino and
12      M.L. holding each other on the basement bed. This angered him because the
        defendant was engaged. The defendant did not testify, but his statement to police
13      that he was too drunk to remember the night's events was entered at trial. After a
        recess for consultation, the defense rested after Mohamud's testimony without the
14      defendant taking the stand. The defense also declined to call its expert to testify
        concerning memory and intoxication.

15      The prosecutor began his closing argument by calling the defendant "a
        predator who abused and violated" M.L., while she was intoxicated. In closing,
16      defense counsel stated that his client was not a predator, but had made two mistakes
        by getting very drunk and cheating on his fiancé. He stressed how vague the
17      victim's testimony had been and the fact that she, too, was intoxicated.

18      The jury found the defendant guilty of second degree rape. Defendant
        retained new counsel and moved for a new trial, arguing that his original counsel
19      had prevented him from testifying. Trial counsel also testified at the hearing and
        explained that although Mr. Castro-Lino originally had been planning to testify,
20      plans changed after Mr. Mohamud testified. Counsel and his client consulted
        before resting and decided that the testimony of both the defendant and the expert
21      were now unnecessary. Mr. Castro-Lino testified that he had wanted to testify, but
        accepted his attorney's advice not to do so based on their belief the defense would
        win. [Internal citation omitted.]

22      The trial court rejected the motion, noting both that the defendant was not
        denied the opportunity to testify by counsel and that the defendant had never
23      indicated the subject matter of his proposed testimony. [Internal citation omitted.]
        Mr. Castro-Lino then timely appealed.

24

Dkt. 15-1, at 18–20.

Division Three rejected petitioner's arguments that the trial court erred in denying his motion for a new trial and that his post-trial counsel rendered ineffective assistance related to the motion for a new trial. Dkt. 15-1, at 21. Division Three also disagreed with petitioner's argument that his trial counsel rendered ineffective assistance by failing to object to alleged prosecutorial misconduct during closing argument. Dkt 15-1, at 23. Petitioner, acting *pro se*, sought discretionary review in the Washington State Supreme Court—but only of the conclusion that his trial counsel was not ineffective for failing to object to alleged prosecutorial misconduct. Dkt. 15-1, at 201. The Supreme Court denied discretionary review without comment, and the mandate issued on November 27, 2017. Dkt. 15-1, at 230, 232.

### B. Collateral Review

Petitioner filed a personal restraint petition ("PRP") in Division Two of the Court of Appeals on April 20, 2018. Dkt. 15-1, at 234. In his PRP, petitioner asserted that his trial counsel rendered ineffective assistance by failing to call an expert witness and a detective as defense witnesses. *See* Dkt. 15-1, at 362. Division Two dismissed the PRP (Dkt. 15-1, at 362), and the Supreme Court Commissioner issued a ruling denying petitioner's subsequent request for review. Dkt. 15-1, at 382–84. A certificate of finality issued on June 18, 2019. Dkt. 15-1, at 386.

### EVIDENTIARY HEARING

The decision to hold a hearing is committed to the Court's discretion. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Landrigan*, 550 U.S. at 474. In determining whether

relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before

the state court. *Cullen*, 131 S.Ct. at 1388.  A hearing is not required if the allegations would not

entitle petitioner to relief under 28 U.S.C. § 2254(d). *Landrigan,* 550 U.S. at 474.  "It follows

that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a

district court is not required to hold an evidentiary hearing." *Id.*; *see also Cullen,* 131 S. Ct.

1388 (2011).  The Court does not find it necessary to hold an evidentiary hearing because, as

discussed in this report and recommendation, petitioner's grounds for relief may be resolved on

the existing state court record.

## DISCUSSION

### I.  AEDPA Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "bars relitigation

of any claim 'adjudicated on the merits' in state court, subject only to the exceptions set forth in

[28 U.S.C.] §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

The first exception, § 2254(d)(1), allows habeas relief on the basis that an adjudication

"resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States."  The

Supreme Court has ruled that a state decision is "contrary to" clearly established Supreme Court

precedent if the state court either (1) arrives at a conclusion opposite to that reached by the

Supreme Court on a question of law, or (2) confronts facts "materially indistinguishable" from

relevant Supreme Court precedent and arrives at an opposite result. *Williams v. Taylor*, 529 U.S.

362, 405 (2000).

Moreover, under § 2254(d)(1), "a federal habeas court may not issue the writ simply

because that court concludes in its independent judgment that the relevant state-court decision

1   applied clearly established federal law erroneously or incorrectly. Rather, that application must

2   also be unreasonable." *Id*. at 411; *see Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). An

3   unreasonable application of Supreme Court precedent occurs "if the state court identifies the

4   correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts

5   of the particular state prisoner's case." *Williams*, 529 U.S. at 407.  In addition, a state court

6   decision involves an unreasonable application of Supreme Court precedent "'if the state court

7   either unreasonably extends a legal principle from [Supreme Court] precedent to a new context

8   where it should not apply or unreasonably refuses to extend that principle to a new context where

9   it should apply.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Williams*, 529

10  U.S. at 407).

11          The second § 2254 exception, § 2254(d)(2), provides for habeas relief if the adjudication

12  "resulted in a decision that was based on an unreasonable determination of the facts in light of

13  the evidence presented in the State court proceeding."  Federal habeas courts must presume the

14  correctness of state courts' factual findings unless applicants rebut this presumption with "clear

15  and convincing evidence."  28 U.S.C. § 2254(e)(1).  Further, review of state court decisions

16  under §2254(d)(1) is "limited to the record that was before the state court that adjudicated the

17  claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

18          **II.  Proceedings on Motion for a New Trial**

19          Petitioner's first two grounds for relief are related to his motion for a new trial in the

20  superior court.  He argues that the superior court erred when it denied the motion and that his

21  post-trial counsel rendered ineffective assistance by failing to elicit how petitioner would have

22  testified, had he testified at his trial.  Dkt. 28, at 26, 31.  For his part, respondent asserts that

23

24

1  petitioner cannot obtain relief on these grounds because they are unexhausted and procedurally

2  defaulted.  Dkt. 29, at 9.  Respondent is correct.

3  **A.  Exhaustion and Procedural Default Rules**

4  A prerequisite to obtaining habeas relief is that petitioner "has exhausted the remedies

5  available in the courts of the State" or that there is either an absence of available State corrective

6  progress or circumstances that render such process ineffective to protect petitioner's rights.  28

7  U.S.C.A. § 2254(b).  "Exhausting" claims within the meaning of § 2254(b) requires "'giving the

8  State the opportunity to pass upon and correct alleged violations of its prisoners' federal

9  rights. . . .  To provide the State with the necessary opportunity, the prisoner must fairly present

10 his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the

11 claim.'"  *Casey v. Moore*, 386 F.3d 896, 911 (9th Cir. 2004) (quoting *Baldwin v. Reese,* 541 U.S.

12 27 (2004) (internal quotation omitted)).

13 **B.  Grounds One and Two Are Unexhausted and Procedurally Defaulted**

14 Here, petitioner raised arguments related to his first and second grounds for review only

15 on direct appeal to Division Three of the Court of Appeals.  *See* Dkt. 15-1, at 21.  Petitioner did

16 not challenge Division Three's rejection of his arguments related to the post-trial proceedings in

17 his motion for discretionary review (Dkt. 15-1, at 201), and the Supreme Court did not discuss

18 them in its ruling denying review.  Dkt. 15-1, at 230.  Nor did petitioner raise these arguments on

19 collateral review.  *See* Dkt. 15-1, at 236, 367.  Therefore, they are unexhausted.  The Court notes

20 that petitioner does not assert—nor does the record reflect—a lack of availability of the state

21 corrective process.  *See* 28 U.S.C. § 2254(b).

22 If a petitioner's claims are procedurally barred under state law, they are deemed

23 procedurally defaulted for purposes of federal habeas review.  *Coleman v. Thompson*, 501 U.S.

24

1    722, 735 n.1 (1991).  Petitioner's claims are also procedurally barred because, were he to attempt

2    to present them now, the state courts would not review them.  "No petition or motion for

3    collateral attack on a judgment and sentence in a criminal case may be filed more than one year

4    after the judgment becomes final if the judgment and sentence is valid on its face and was

5    rendered by a court of competent jurisdiction."  RCW 10.73.090(1).  Petitioner's judgment and

6    sentence became final in November 2017, when the Court of Appeals issued its mandate on

7    direct review.  *See* Dkt. 15-1, at 232.  Grounds (1) and (2) do not assert any of the arguments that

8    are exceptions to the one-year time limit.  *See* RCW 10.73.100.

9         Separately from the time-bar, petitioner's collateral attack would also be barred by the

10   rule against successive petitions.  *See* RCW 10.73.140 ("If a person has previously filed a

11   petition for personal restraint, the court of appeals will not consider the petition unless the person

12   certifies that he or she has not filed a previous petition on similar grounds, and shows good cause

13   why the petitioner did not raise the new grounds in the previous petition.").  Petitioner has

14   already filed a PRP in state court.  *See* Dkt. 15-1, at 234.

15        Petitioner appears to argue that he has shown that he can bring a collateral challenge in

16   state court because the Washington State Governor issued an executive proclamation temporarily

17   suspending the one-year time bar in RCW 10.73.090.  Dkt. 39, at 9.  But that proclamation is no

18   longer in effect.  *See* Office of the Governor, Washington State, Governor's Proclamation 20-47,

19   Criminal Justice – Limitation of Actions (April 14, 2020).[1]  Nor has the Governor issued any

20   subsequent proclamations extending the suspension.  Finally, even if the time-bar were still

21   suspended, as noted above, petitioner's collateral challenge is separately barred by the rule

22   against successive petitions.  *See* RCW 10.73.140

23

24   [1] *Available at* https://www.governor.wa.gov/office-governor/official-actions/proclamations.

1    Therefore, the first and second grounds for review are procedurally defaulted, and the

2    Court looks to whether petitioner has shown that the exceptions from procedural default apply.

3    **C.  No Cause and Prejudice or Fundamental Miscarriage of Justice Shown**

4    This Court will hear the merits of a procedurally defaulted claim only if the petitioner

5    can show cause for and prejudice from the default or that there has been a fundamental

6    miscarriage of justice.  *See Coleman*, 501 U.S. at 750.  A petitioner can show cause by

7    demonstrating that "some objective factor external to the defense impeded [petitioner]'s efforts

8    to comply with the State's procedural rule."  *Id.* at 753 (internal citation omitted).

9    Petitioner asserts that "at the advice of a legal librarian, [he] attempted to keep his

10   Supreme Court briefing shorter than previously."  Dkt. 39, at 7.  The Court presumes that

11   petitioner raises this argument as "cause" for his failure to include arguments related to the post-

12   trial hearing in his *pro se* motion for discretionary review of Division Three's opinion on direct

13   appeal.

14   Even if petitioner was following the law librarian's advice, this is not "cause" to

15   overcome his procedural default.  Official "interference" that makes compliance with a

16   procedural rule "impracticable" may amount to cause.  *Coleman*, 501 U.S. at 753.  But accepting

17   advice to keep his briefing pithy would hardly be "interference" with petitioner's ability to

18   litigate his petition for discretionary review.  Relying on faulty advice from a non-lawyer is not

19   "cause" to excuse procedural default, nor does it amount to official "interference."  *See, e.g.*,

20   *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988) (reliance upon incompetent jailhouse

21   attorney not "cause").

22

23

24

1    Petitioner makes no argument that there has been a fundamental miscarriage of justice.

2    Because petitioner shows neither "cause" and prejudice nor a fundamental miscarriage of justice,

3    the Court should deny his first and second grounds for review.

4    **III.  Prosecutorial Misconduct**

5    Petitioner's third, fifth, and sixth grounds of relief related to his allegations that the

6    prosecutor committed misconduct during trial.  Dkt. 28, at 34–35, 47.  The Court addresses

7    petitioner's arguments in turn.

8    As a preliminary matter, the Court notes that in its ruling denying review on direct

9    appeal, the Washington State Supreme Court did not comment on the merits of petitioner's

10    arguments.  *See* Dkt. 15-1, at 230.  Therefore, the Court "looks through" to the last reasoned state

11    court decision—Division Three's opinion.  *See, e.g.*, *Van Lynn v. Farmon*, 347 F.3d 735, 738

12    (9th Cir. 2003)

13    **A.  Sexual Assault Examination Arguments**

14    **1.  Relevant Facts**

15    In closing, the prosecutor argued that the victim's testimony was credible for reasons

16    including that she underwent a sexual assault examination within hours of the rape.  The

17    prosecutor stated that the examination "doesn't sound like a very pleasant process, obviously it's

18    invasive, the body's being examined, samples are being taken. . . ."  Dkt. 20-1, at 466.

19    On direct appeal to Division Three, petitioner challenged these statements, asserting that

20    his counsel performed deficiently by failing to object to these statements during the prosecutor's

21    closing argument.  *See* Dkt. 15-1, at 26.  The appellate court disagreed, analyzing the merits of

22    petitioner's argument of prosecutorial misconduct.  The court concluded that "the prosecutor

23    quite understandably cited to the examination results to prove that sexual intercourse occurred

24

1   and merely recited the nurse's unchallenged testimony.  It was not improper to cite to the

2   testimony."  Dkt. 15-1, at 26.

3                                    **2.  Discussion**

4          During closing arguments, a prosecutor is allowed a reasonably wide latitude and can

5   argue reasonable inferences from the evidence.  *United States v. Gray*, 876 F.2d 1411, 1417 (9th

6   Cir. 1989).  However, it is improper for a prosecutor to make statements or inferences to the jury

7   that he knows to be false or has a strong reason to doubt or to argue facts not in the evidence.

8   *Id.*; *United States v. Reyes*, 577 F.3d 1069, 1077 (9th Cir. 2009).

9          Here, as Division Three concluded, the reference to the examination as invasive and

10  unpleasant was essentially a recitation of the trial testimony.  Indeed, the victim herself testified

11  that the experience was "unpleasant."  Dkt. 20-1, at 156.  And the sexual assault examination

12  nurse explained in detail how she collected the samples from the victim's body.  Dkt. 20-1, at

13  190.  Moreover, the fact that the evidence of the crime was unpleasant does not bar the

14  prosecutor from arguing that the trial evidence shows that a defendant is guilty.  Division Three

15  reasonably applied federal law when it concluded that the prosecutor's comments referring to the

16  examination were not improper.

17                              **B.  Alleged Vouching**

18                                    **1.  Relevant Facts**

19         The prosecutor also argued that the victim's testimony alone, if believed, would support a

20  conviction:  "So in this case if all the evidence that the State had was simply [the victim's]

21  testimony, and if you believed her testimony, *as you should*, given the evidence, that alone, her

22  testimony alone would be enough evidence for you to find him guilty."  Dkt. 20-1, at 465

23  (emphasis added).  Petitioner takes exception to the "as you should" statement.

24

1    Petitioner also challenged this statement in his direct appeal, but Division Three

2    disagreed.  *See* Dkt. 15-1, at 27.  The appellate court reasoned that "[t]he prosecutor clearly

3    pointed out that the evidence supported the victim's testimony and that it, alone, was enough to

4    prove the case.  He did not vouch for [the victim], but tied her credibility to the evidence before

5    the jury."  Dkt. 15-1, at 27.

6    **2.  Discussion**

7    "Improper vouching occurs when the prosecutor places 'the prestige of the government

8    behind the witness' by providing 'personal assurances of [the] witness's veracity.'"  *United*

9    *States v. Kerr*, 981 F.2d 1050, 1053 (9th Cir. 1992) (quoting *United States v. Roberts*, 618 F.2d

10   530, 533 (9th Cir. 1980)).  Improper vouching also occurs where the prosecutor suggests that the

11   testimony of a government witness is supported by outside information not otherwise presented

12   to the jury.  *United States v. Younger*, 398 F.3d 1179, 1190 (9th Cir. 2005).  However, it is

13   permissible for a prosecutor to argue inferences based on evidence introduced at trial.  *See*

14   *Duckett v. Godinez*, 67 F.3d 734, 742 (9th Cir. 1995).  This includes arguing that "one of the two

15   sides is lying."  *United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir. 1993), *as amended on*

16   *denial of reh'g* (Apr. 15, 1993).

17   Here, as Division Three pointed out, the context of the prosecutor's "as you should"

18   statement was that the victim's testimony was more credible than petitioner's based on the

19   victim's consistency in her accounts of what happened, that she immediately told many people

20   what happened, that she submitted to an examination within a few hours, and that defendant

21   changed his story of what happened.  *See* Dkt. 20-1, at 465–67.  Thus, Division Three did not

22   unreasonably apply clearly established federal law when it concluded that the prosecutor's

23   comment that the jury "should believe" the victim was not improper and was within the

24

1   prosecutor's latitude to argue the State's theory of the case.  Contrary to petitioner's argument,

2   based on closing argument as a whole, Division Three did not unreasonably apply clearly

3   established federal law when it held that the prosecutor was not "vouching" for the victim's

4   credibility.

5                **C.  "Abiding" Belief**

6                **1.  Relevant Facts**

7       The prosecutor summarized the jury instructions in closing, as well, including the

8   reasonable doubt instruction.  Regarding this instruction, the prosecutor argued—

9       And if after look[i]ng at all the evidence fully and carefully you have a be[l]ief, a
         belief that the Defendant did these things, a be[l]ief that he's guilty, a belief that

10      abides throughout your deliberations, then at that point you are convinced as the
         law requires, and at that point it becomes your duty under the to find the Defendant

11      guilty, which I would ask you to do based on the evidence.

12   Dkt. 20-1, at 471–72.

13       On direct appeal to Division Three, petitioner challenged this argument, as well.  Again,

14   however, Division Three disagreed—

15       Finally, Mr. Castro-Lino argues that the prosecutor misstated the burden of proof
         when he concluded his initial argument by reciting portions of the burden of proof

16      instruction to the jury and telling them they had a "duty" to convict the defendant
         if they had an abiding belief in his guilt after considering the evidence.  There was

17      no error.  The prosecutor properly recited portions of jury instruction defining
         reasonable doubt, and then referenced (without citing) the concluding line of jury

18      instruction, which told jurors that if all of the elements were proven beyond a
         reasonable doubt, it was their "duty" to convict.

19   Dkt. 15-1, at 27.

20                **2.  Discussion**

21       One of the jury instructions at petitioner's trial pertained to the definition of a "reasonable

22   doubt."  The last part of that instruction informed the jury that,

23       [a] reasonable doubt is one for which a reason ex[i]sts and may arise from the
         evidence or lack of evidence.  It is such a doubt as would exist in the mind of a

24

1       reason[a]ble able person after fully, fairly and carefully considering all of the

2       evidence or lack of evidence.  If, from such consideration, you have an abiding
      belief in the truth of the charge, you are satisfied beyond a reasonable doubt.

3 Dkt. 20-1, at 454–55.

4       As Division Three concluded, it was a reasonable characterization of this jury instruction

5 for the prosecutor to argue that if the jury had an abiding belief throughout their deliberations in

6 petitioner's guilt, it should find him guilty.  Inasmuch as petitioner took issue with the

7 prosecutor's use of the word "duty," Division Three did not unreasonably apply clearly

8 established federal law when it concluded that where the prosecutor referred to the burden of

9 proof and the trial evidence in making this argument, it was not improper.  *See, e.g.*, *United*

10 *States v. Sanchez*, 176 F.3d 1214, 1225 (9th Cir. 1999) (distinguishing between an allowable

11 argument that if the jury found every element of the crime beyond a reasonable doubt, it was

12 obligated to convict, and an impermissible argument that it is the jury's duty to find a defendant

13 guilty, without further elaboration).  Petitioner fails to show that the state court unreasonably

14 applied clearly established federal law.

15           **D.  Burden Shifting**

16              **1.  Relevant Facts**

17       In the defense's closing argument, petitioner's attorney asserted that the State had to

18 prove a negative and that the victim's testimony was not credible.  Dkt. 20-1, at 473.  Petitioner's

19 attorney argued that there were many reasons that the victim could be lying—such as attention-

20 seeking behavior or regret for a mutually consensual encounter.  Dkt. 20-1, at 480.  In his

21 rebuttal closing argument, the prosecutor responded by arguing that petitioner had provided no

22 evidence tending to support that the victim was lying and that "if you want to say that

23

24

1    somebody's lying, if you want to plausibly argue that, you better have a rea[s]on. You better

2    have something that makes sense." Dkt. 20-1, at 494.

3        Petitioner attacked the rebuttal closing argument on appeal, but Division Three held that

4    the prosecutor's comments were proper: "This argument was a proper rebuttal to the defense

5    argument that [the victim] was lying about the incident. . . . It is not burden-shifting to point out

6    that evidence does not support a defense argument." Dkt. 15-1, at 27.

7        **2. Discussion**

8        In a case where the prosecutor argued that the State had the burden of proof, then

9    challenged the evidence supporting the defendant's theory of the case in closing, the Ninth

10   Circuit held that the prosecutor did not shift the burden of proof. *See Demirdjian v. Gipson*, 832

11   F.3d 1060, 1071 (9th Cir. 2016). The *Demirdjian* court explained, "we acknowledge, as we must

12   under AEDPA, that a fairminded jurist . . . could conclude the repetition of 'competent, reliable,

13   admissible evidence' [that the defense had to provide to explain inculpatory evidence] merely

14   highlighted that the defense had challenged the prosecution's case with innuendo and accusation,

15   not exculpatory evidence." *Id.*

16       So, too, here. The prosecutor began his rebuttal closing by reminding the jury that the

17   State had the burden of proof (Dkt. 20-1, at 488) and was clearly responding to the defense's

18   argument that the victim was lying by pointing out the lack of evidence of a motive for her to lie.

19   Division Three reasonably applied federal law when it highlighted these facts and concluded that

20   the prosecutor did not commit misconduct.

21   ///

22   ///

23   ///

24

1        **E.  "Predator" and "Prey"**

2            **1.  Relevant Facts**

3        The prosecutor began his closing argument by describing petitioner as "a predator who

4    abused and violated [the victim] when she was intoxicated, when she was asleep, and that he

5    violated her in the worst way that we could think of."  Dkt. 20-1, at 461.  Later in his argument,

6    the prosecutor described petitioner as "prey[ing] on" the victim.  Dkt. 20-1, at 462.

7            When petitioner challenged these statements on direct appeal, Division Three held that

8    the remarks were not prejudicial—

9            Whether the prosecutor actually used inflammatory and prejudicial language is not
             a question we need decide here since the remarks were not prejudicial.  Defense
10           counsel embraced the term "predator" and turned it around, emphasizing that his
             client made a mistake by cheating on his fiancé with the victim.  It played directly
11           to the defense theme of the case—a voluntary sexual encounter fueled by alcohol
             consumption rather than a rape by an older man of an incapacitated female.
12   Dkt. 15-1, at 26.

13           **2.  Discussion**

14           To establish prosecutorial misconduct, it is not enough merely to show that certain

15   comments were improper.  For example, in *Darden v. Wainwright*, the Supreme Court held that

16   it was it was "undoubtedly improper" for the prosecutor to make comments in closing that

17   included referring to the defendant as an "animal."  477 U.S. 168, 180 & n.11 (1986).  Even so,

18   the relevant question was "whether the prosecutors' comments 'so infected the trial with

19   unfairness as to make the resulting conviction a denial of due process.'"  *Id.* (quoting *Donnelly v.

20   DeChristoforo*, 416 U.S. 637 (1974)).  Applying *Darden*, two circuit courts of appeals have

21   rejected challenges to the use of the word "predator" to describe a defendant in closing argument.

22   *See Banks v. Workman*, 692 F.3d 1133, 1149 (10th Cir. 2012) (holding that referring to

23   defendant in closing as a "wild animal that stalks its prey" and "a predator who lurks in the

24

1    shadows" was improper but did not deprive defendant of a fair trial); *Byrd v. Collins*, 209 F.3d

2    486, 529, 536 (6th Cir. 2000) (reasoning that three references to defendant as a predator in

3    closing did not deprive him of a fair trial).

4            Here, as discussed above and as Division Three found, the bulk of the other challenged

5    argument did not violate clearly established federal law.  The trial court instructed the jury that

6    the closing argument was not evidence.  In light of the authority discussed above, Division Three

7    did not unreasonably apply clearly established federal law when it concluded that the fleeting

8    references to a "predator" and "prey" during closing argument were not prejudicial and did not

9    deprive petitioner of a fair trial.

10           Petitioner argues that the prosecutor committed misconduct similar to misconduct in

11   *United States v. Sanchez*, in which the prosecutor called the defense a "sham" and repeatedly

12   vouched for State witnesses throughout his closing argument, including rebuttal.  Dkt. 39, at 5;

13   176 F.3d at 1224.  However, the repeated and flagrant misconduct by the prosecutor in *Sanchez*

14   was prejudicial; whereas here, Division Three did not unreasonably clearly established federal

15   law when it concluded that the bulk of the challenged argument was proper argument from the

16   evidence and jury instructions.  Nor is petitioner's citation to *Dubria v. Smith* to the contrary,

17   because in that case, the Ninth Circuit concluded that counsel did not render ineffective

18   assistance by failing to object to alleged misconduct.  *See* Dkt. 39, at 6; 224 F.3d 995, 1004 (9th

19   Cir. 2000).

20           In sum, petitioner fails to show that Division Three unreasonably rejected his arguments

21   that the prosecutor committed misconduct in closing.

22   ///

23   ///

24

REPORT AND RECOMMENDATION - 17

1  **IV.  Ineffective Assistance of Counsel**

2  **A.  Legal Principles**

3  To prevail on a claim that counsel rendered ineffective assistance, a petitioner must show

4  both that "counsel's performance was deficient" and that "the deficient performance prejudiced

5  the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To show prejudice, a

6  defendant "must show that there is a reasonable probability that, but for counsel's unprofessional

7  errors, the result of the proceeding would have been different." *Id.* at 694.

8  Moreover, when reviewing a habeas claim that counsel rendered ineffective assistance,

9  the Supreme Court has explained—

10  the pivotal question is whether the state court's application of the *Strickland*
   standard was unreasonable.  This is different from asking whether defense
11  counsel's performance fell below *Strickland*'s standard.  Were that the inquiry, the
   analysis would be no different than if, for example, this Court were adjudicating a
12  *Strickland* claim on direct review of a criminal conviction in a United States district
   court.  Under AEDPA, though, it is a necessary premise that the two questions are
13  different.  For purposes of § 2254(d)(1), "an *unreasonable* application of federal
   law is different from an *incorrect* application of federal law."  [Internal citation
14  omitted.]  A state court must be granted a deference and latitude that are not in
   operation when the case involves review under the *Strickland* standard itself.
15  A state court's determination that a claim lacks merit precludes federal
   habeas relief so long as "fairminded jurists could disagree" on the correctness of
16  the state court's decision.  [Internal citation omitted.]

17  *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

18  **B.  Failure to Object to Alleged Prosecutorial Misconduct**

19  The Court notes that petitioner frames his arguments about prosecutorial misconduct as

20  both alleged error depriving him of due process and ineffective assistance of his trial counsel,

21  who did not object to the claimed misconduct.  *E.g.*, Dkt. 28, at 33–36.  However, to prevail on

22  such a claim, a petitioner must show that his counsel's performance was deficient and that he

23  suffered prejudice therefrom.  Petitioner's arguments that the prosecutor committed misconduct

24

1    all fail because, as discussed above, petitioner fails to show that the prosecutor's argument was

2    both improper and prejudicial.  Thus—and as Division Three reasonably concluded on direct

3    appeal—petitioner's arguments that the prosecutor committed misconduct are not grounds to

4    find that his counsel rendered ineffective assistance.  *See* Dkt. 15-1, at 225 & n.1.

5                **C.  Failure to Call Detective**

6            Petitioner asserts that his counsel rendered ineffective assistance by failing to call a

7    detective who interviewed petitioner and wrote the initial report in the case.  *See* Dkt. 28, at 36.

8    Petitioner claims that the detective's testimony would have impeached the victim's testimony

9    based on the victim's allegedly inconsistent account of events when the detective interviewed

10   her.  Dkt. 28, at 36.

11           In its ruling denying review, the Supreme Court concluded as follows—

12           [Petitioner] argues that his trial counsel was ineffective in not calling the
             investigating detective to testify to a statement the victim had made to him in order
13           to impeach the victim's trial testimony.  But the acting chief judge found no
             showing on Mr. Castro-Lino's part that the victim had made an inconsistent
14           statement that could be used to impeach her trial testimony.  Mr. Castro-Lino fails
             to demonstrate otherwise.  He claims the victim's testimony relating how much
15           alcohol she drank on the night of the incident is consistent [sic] with what she told
             the detective.  But there is no fundamental inconsistency.  The victim testified that
16           she remembered drinking a couple of beers, but that she could have had more, and
             that she might have also had a rum and coke.  According to the police report, the
17           victim stated after the incident that she had one mixed drink and four beers.
             Nothing in that statement impeaches her trial testimony.
18   Dkt. 15-1, at 382–83.

19           The Court notes that the Supreme Court's ruling did not address other alleged

20   inconsistencies that petitioner asserted between the police report and the victim's trial testimony.

21   *See* Dkt. 15-1, at 373.  This Court presumes a state court adjudicated the merits of claims when

22   the opinion expressly addresses some, but not all claims raised in a petition.  *Johnson v.*

23   *Williams*, 568 U.S. 289, 292–93, 298–301 (2013).  Therefore, the Court analyzes whether the

24

REPORT AND RECOMMENDATION - 19

1   Supreme Court would reasonably have concluded that the other statements in the police report

2   that petitioner relies on were not inconsistent with the victim's testimony.

3       Petitioner argues that the state court erred because there were inconsistencies between the

4   victim's statements to the detective and her trial testimony, so that the detective's testimony

5   could have been used to impeach the victim's testimony. *See* Dkt. 28, at 42. The Court has

6   reviewed the transcript of the victim's testimony alongside petitioner's citations from the police

7   report and finds that petitioner has not pointed to inconsistencies such that the detective's

8   testimony would have been admissible to impeach the victim's testimony.

9       The Supreme Court did not unreasonably determine the facts in light of the trial evidence

10   when it concluded that the victim's prior statement that she had one mixed drink and four beers

11   (Dkt. 28, at 63) was not inconsistent with her trial testimony that she had a couple of beers and

12   "maybe" a mixed drink. *See* Dkt. 20-1, at 140–41. In his habeas petition, petitioner points to

13   other alleged inconsistencies, including the victim's statement to the detective that she was

14   certain it was "anal penetration" (Dkt. 28, at 63); however, at trial, the victim did not testify to

15   the contrary. Instead, she stated that she could not recall the part of her body that was

16   penetrated. Dkt. 20-1, at 152. Petitioner also relies on the victim's statement to the detective

17   that her clothes were not pulled down (Dkt. 28, at 63); however, again, at trial the victim did not

18   testify to the contrary, stating that she could not recall whether she was penetrated through her

19   clothing. Dkt. 20-1, at 164. Finally, petitioner relies on the victim's statement that she went to

20   sleep next to a person named Mohammed (Dkt. 28, at 63), but at trial the victim similarly stated

21   that she went to sleep next to "Moody" (Mohammed). *See* Dkt. 20-1, at 140, 146.

22       The lack of recollection of the victim at trial is not inconsistent with the greater detail that

23   she provided when the detective interviewed her. The victim readily acknowledged that she

24

1  could not recall details that she had previously given.  Thus, petitioner fails to show that the state

2  court unreasonably determined the facts when it concluded that petitioner had failed to show

3  inconsistency between the statements in the police report and the victim's trial testimony.  Based

4  on this conclusion, the state court did not unreasonably apply clearly established federal law

5  when it concluded that trial counsel was not ineffective for failing to call the detective to

6  impeach the victim's testimony with these statements.

7                          **D.  Failure to Call Expert Witness**

8           Petitioner also asserts that trial counsel was ineffective for failing to call a witness to

9  discuss the effects of alcohol on memory.  Dkt. 28, at 52.  Petitioner asserts that this testimony

10  would have explained petitioner's changing account of the night.  *See* Dkt. 28, at 52.

11          Before trial, petitioner's counsel intended to call Dr. Daniel Reisberg as a witness to

12  discuss the effects of alcohol on memory, including blackouts and recall of those memories.  *See*

13  Dkt. 20-1, at 119–21.  However, counsel did not call Dr. Reisberg as a witness for the defense.

14  Dkt. 20-1, at 436.  Nor did petitioner testify.

15          The Supreme Court's ruling denying review also addressed this issue, concluding,

16          Mr. Castro-Lino also argues that defense counsel was ineffective in not
17      calling an expert to testify to the effect of alcohol consumption on memory, as
         counsel had intended to do before trial.  But the proposed testimony was to go to
18      Mr. Castro-Lino's previous statements that he lacked memory of the events on the
         day of the incident (blacked out) due to intoxication, even though he claimed by
19      the time of trial that the sexual intercourse was consensual.  The proposed,
         expert purportedly would have testified about the effect of alcohol on blackouts and
20      recalled memories.  But ultimately, on the advice of counsel, Mr. Castro-Lino did
         not testify, and thus he never personally asserted a loss of memory or recalled
21      memory claim to the jury that needed expert explanation.  (Another witness
         supported his claim that the intercourse was consensual.)  Mr. Castro-Lino also
22      presents no evidence as to what the proposed expert would have actually testified
         to.  And in any event, to demonstrate ineffective assistance, Mr. Castro-Lino must
23      show that counsel had no conceivably legitimate tactical reason for the approach
         he took.  [Case citation omitted.]  He does not make this showing, nor does he show

24

that, even if counsel had taken a different approach, there is a reasonable probability the outcome would have been different. . . .

Dkt. 15-1, at 383.

The Supreme Court did not unreasonably determine the facts in light of the evidence presented when it concluded that at trial, because petitioner did not take the stand and testify contrary to his prior account of events, the expert's testimony about recalled memories was not necessary. The jury heard petitioner's account of events to an investigator, which was that petitioner denied touching the victim but claimed that if the DNA testing came back positive, he could have been so drunk that he did not remember. *See* Dkt. 20-1, at 11, 14–15. Because petitioner never testified, he never provided additional detail or contradicted his earlier statements, so that the state court did not unreasonably determine that it was reasonable for his counsel to decide that the expert's testimony was unnecessary.

Petitioner's arguments in his reply brief on this point assert that had he testified, the memory expert's testimony would have been crucial. *See* Dkt. 39, at 15. But, petitioner did not testify. And inasmuch as petitioner repeats his arguments related to his first and second grounds for relief and the decision not to testify, § 2254(b)(1)(A) forecloses reaching these unexhausted arguments. *See supra*, part II.

Therefore, petitioner fails to show that the state supreme court unreasonably applied federal law or unreasonably determined the facts related to his claims that his trial counsel rendered ineffective assistance.

## CERTIFICATE OF APPEALABILITY

Petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district court's dismissal of the federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. A certificate of appealability may issue only if petitioner

1    has made "a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. §

2    2253(c)(2).  Petitioner satisfies this standard "by demonstrating that jurists of reason could

3    disagree with the district court's resolution of his constitutional claims or that jurists could

4    conclude the issues presented are adequate to deserve encouragement to proceed further."

5    *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (*citing Slack v. McDaniel*, 529 U.S. 473, 484

6    (2000)).  Pursuant to this standard, this Court concludes that petitioner is not entitled to a

7    certificate of appealability with respect to this petition.

## CONCLUSION

8

9         The petition for habeas corpus should be denied.  A certificate of appealability should not

10   issue.

11        Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

12   fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P.

13   6.  Failure to file objections will result in a waiver of those objections for purposes of *de novo*

14   review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver

15   of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v.*

16   *Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit

17   imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on

18   September 25, 2020, as noted in the caption.

19        Dated this 9th day of September, 2020.

20

21

22   J. Richard Creatura
     United States Magistrate Judge

23

24